IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-10059

Summary Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PATRICIA DURA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
(4:94-CR-74-Y)

_____

November 24, 1995

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Patricia Dura appeals the sentence imposed pursuant to her conviction on one count of bank robbery in violation of 18 U.S.C. § 2113. We have jurisdiction, 28 U.S.C. § 1291, and we now affirm.

I.

_____

[*]Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

On February 22, 1994, Dura and two other women, Sharon Denise Curtis and Emma Cooley, robbed the First Interstate Bank in Fort Worth, Texas. Posing as a customer seeking to open an account at the bank, Curtis "cased" the bank while Cooley and Dura waited outside. After Curtis informed Cooley and Dura that there were no police inside the bank, Cooley and Duru entered the bank and Cooley handed a note to a teller. The note read: "This is no joke, make one wrong move and I will blow your fucking head off. EMPTY YOUR DRAWER." Cooley held open the coat as if to indicate that she was carrying a weapon. After the teller filled Cooley's purse with cash, Cooley and Duru fled from the bank and joined Curtis in the getaway car.

Prior to the First Interstate robbery, Dura had also robbed the Central Bank and Trust in Kennedale, Texas on January 10, 1994. In that robbery, Cooley handed a note to the teller threatening to shoot the teller. At the same time, Duru opened her jacket and revealed what appeared to be the grip of a handgun. Subsequent investigation by the F.B.I. disclosed that neither Cooley nor Duru possessed a handgun during either robbery; however, Cooley and Curtis later acknowledged that Duru carried a BB pistol during these robberies.

On August 16, 1994, Duru, along with Cooley and Curtis, was indicted on one count of bank robbery. On October 16, 1994, Duru pled guilty and signed a Factual Resume stipulating to the facts surrounding both robberies. In preparing the pre-sentence investigation report, the U.S. Probation Office proposed to add

2

to the base offense level of 22 a three-level enhancement for possession of a dangerous weapon during the commission of the crime and a two-level enhancement for multiple offenses. On January 3, 1995, the district court adopted the probation office's recommendations and sentenced Duru to 51 months imprisonment, the minimum guideline sentence. Duru timely appealed.

## II.

Duru first challenges her sentence on the ground that her co-defendants received sentences less severe than her own. In United States v. McKinney, 53 F.3d 664, 678 (5th Cir. 1995), we held that a criminal defendant "cannot challenge his sentence based solely on the lesser sentence given to his co-defendants." We see no reason to depart from that rule in this case.

Duru next contends that the three-level enhancement for the possession of the BB gun was inappropriate since a BB gun is not a dangerous weapon and, even if it is, Duru did not brandish it during the robbery. We reject this contention. The Sentencing Guidelines expressly provide that a BB gun is a "dangerous weapon." U.S.S.G. § 1B1.1 application note 1(e). In addition, the Guidelines provide for the three-level enhancement where a "dangerous weapon was brandished, displayed, or possessed" during the commission of the robbery. U.S.S.G. § 2B3.1(b)(2)(E) (emphasis added). Cooley and Curtis both stated that Duru possessed a BB gun during the First Interstate robbery, and Duru never offered evidence that she did not.

Lastly, Duru argues that the district court erred in considering the Central Bank robbery as a "multiple offense" for purposes of the two-level enhancement under § 3D1.4 since the plea agreement provided that no further criminal charges would be brought against Duru for conduct described in the Factual Resume, which included that Central Bank robbery.  We disagree.  The Guidelines expressly provide that "[a] plea agreement . . . containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s)."  U.S.S.G. § 1B1.2(c).  Duru stipulated to her participation in the Central Bank robbery in the Factual Resume, and the plea agreement expressly provides that the facts set forth in the Factual Resume "may be taken into consideration by the Court in determining what sentence to impose."

AFFIRMED.